**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PALACE SKATEBOARDS GROUP, et al.,      :
                                       :
                    Plaintiffs,        :
                                       :
        -against-                      :
                                       :        MEMORANDUM DECISION
GLOBAL OUTLET STORE, et al.,           :           AND ORDER
                                       :
                    Defendants.        :        20 Civ 6103 (GBD) (SN)
                                       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PALACE SKATEBOARDS GROUP, et al.,      :
                                       :
                    Plaintiffs,        :
                                       :
        -against-                      :
                                       :        20 Civ. 6108 (GBD) (SN)
AAABBBLUCKY, et al.,                   :
                                       :
                    Defendants.        :
                                       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GEORGE B. DANIELS, United States District Judge:

Plaintiff Palace Skateboards ("Palace") is a London-based skateboard shop and clothing brand. (20-cv-6103 Compl., ECF No. 8, ¶ 7.) Plaintiff GSLT Holdings Limited ("GSLT") is Palace's parent company. (*Id.* ¶ 5.) GSLT holds trademarks in various logos and graphics (the "Palace Marks") and licenses those marks exclusively to Palace. (*Id.* ¶ 40.) In Case No. 20-cv-6103, Defendants include 16 retailers operating on Alibaba.com and Aliexpress.com.[1] (*Id.* ¶ 6.) In Case No. 20-cv-6108, Defendants include 31 retailers operating on DHGate.com.[2] (20-cv-6108

---

[1] In Case No. 20-cv-6103, the Plaintiffs initially sued 40 retailers but voluntarily dismissed 24.

[2] In Case No. 20-cv-6108, the Plaintiffs initially sued 32 retailers but voluntarily dismissed one.

Compl., ECF No. 6, ¶ 6.) Defendants offer products with graphics either "identical or confusingly similar" to the Palace Marks without any license or permission from Plaintiffs. (*Id.* ¶ 55; 20-cv-6103 Compl., ¶ 54.)

In two related cases, Plaintiffs sued Defendants for trademark and unfair competition violations. Simultaneously, Plaintiffs moved for: (1) a temporary restraining order; (2) an order restraining the Defendants' storefronts and assets; (3) an order to show cause for a Preliminary Injunction; (4) an order authorizing alternative service; and (5) an order authorizing expedited discovery. This Court granted Plaintiffs' application and entered Preliminary Injunctions against Defendants.

After Defendants failed to respond to Plaintiffs' Complaints, Plaintiffs moved for default judgment, a permanent injunction, and damages. (*See* 20-cv-6103 Mot. for Default Judgment and Permanent Injunction ("Mot."), ECF No. 36; 20-cv-6108 Mot., ECF No. 31.) This Court entered default judgment against Defendants and referred the matters to Magistrate Judge Sarah Netburn for an inquest on damages and prejudgment interest. (20-cv-6103, Default Judgment Order, ECF No. 42; 20-cv-6108 Default Judgment Order, ECF No. 36.)

Before this Court is Magistrate Judge Sarah Netburn's September 5, 2024 Report and Recommendation, finding Defendants liable for trademark counterfeiting under the Lanham Act, and recommending that Plaintiffs be awarded $75,000 in statutory damages per Defendant, plus all applicable interest. (20-cv-6103 Report & Recommendation ("Report"), ECF No. 57; 20-cv-6108 Report, ECF No. 49.) No party filed objections to the Report. Having reviewed the Report for clear error and finding none, this Court **ADOPTS** the Report in its entirety.

The Preliminary Injunction is hereby replaced by a permanent injunction. Defendants are permanently enjoined from engaging in any further counterfeiting or infringement of Plaintiffs'

Palace Marks, as detailed in the injunctive provisions of the Preliminary Injunction Orders. (*See* 20-cv-6103 Preliminary Injunction Order, ECF No. 5; 20-cv-6108 Preliminary Injunction Order, ECF No. 16.)

## I.    LEGAL STANDARDS

### A. Reports and Recommendations

A reviewing court "may accept, reject, or modify, in whole or in part, the findings or recommendations" made within a magistrate judge's report. 28 U.S.C. § 636(b)(1)(C). Portions of a magistrate judge's report to which no or "merely perfunctory" objections have been made are reviewed for clear error. *See Edwards v. Fischer,* 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006). The clear error standard also applies if a party's "objections are improper—because they are 'conclusory,' 'general,' or 'simply rehash or reiterate the original briefs to the magistrate judge.'" *Stone v. Comm'r of Soc. Sec.*, No. 17-CV-569 (RJS) (KNF), 2018 WL 1581993, at *3 (S.D.N.Y. Mar. 27, 2018) (citation omitted). Clear error is present when "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." *Brown v. Cunningham*, No. 14-CV-3515 (VEC) (MHD), 2015 WL 3536615, at *4 (S.D.N.Y. June 4, 2015) (citations omitted).

### B. Permanent Injunctions

A district court has authority under the Lanham Act to grant injunctive relief to prevent further violations of a plaintiff's trademark. *See* 15 U.S.C. § 1116. Furthermore, a district court has the authority to grant a permanent injunction on a motion for default judgment. *See, e.g., Kelly*

*Toys Holdings, LLC v. alialialiLL Store*, 606 F. Supp. 3d 32 (S.D.N.Y. 2022) (granting permanent injunction after default by counterfeiters of plaintiff's trademarks).

## II.    THE REPORT AND RECOMMENDATION IS FREE OF CLEAR ERROR

### A. Plaintiffs are Entitled to Statutory Damages

#### 1.  Plaintiffs have Established Liability

Courts evaluating damages in a default context first look to the complaint to determine whether the plaintiff has established a prima facie case for recovery. *See Lenard v. Design Studio*, 889 F. Supp. 2d 518, 528 (S.D.N.Y. 2012). In light of Defendants' default, Plaintiffs' properly pleaded allegations are accepted as true, except those relating to damages. *See Cotton v. Slone*, 4 F.3d 176, 181 (2d. Cir. 1993).

Plaintiffs seek statutory damages pursuant to 15 U.S.C. § 1117(c) of the Lanham Act for trademark counterfeiting and trademark infringement.[3] To establish a claim for trademark counterfeiting, a plaintiff must demonstrate that: (1) its mark is entitled to protection, and (2) the "defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003).

Magistrate Judge Netburn properly analyzed the elements of trademark counterfeiting in determining that Plaintiffs have established a claim. The Report found that Plaintiffs' trademark registrations provide sufficient proof that Plaintiffs own and have the exclusive right to use the Palace Marks in commerce. (Report at 5.) The Report also correctly determined that Defendants' use of the Palace Marks would cause confusion. (*Id.*) Taking the allegations in the Complaints as

---

[3] Magistrate Judge Netburn only evaluated Plaintiffs' claim for trademark counterfeiting because Plaintiffs are "not entitled to duplicative recoveries for the same intellectual property theft under multiple theories of liability." *Kelly Toys Holdings, LLC v. Guangzhou Lianqi Tech. Co., Ltd.*, No. 21-cv-8111 (AS) (GWG), 2024 WL 1360919, at *3 (S.D.N.Y. Apr. 1, 2024), *R. & R. adopted*, 2024 WL 1908435 (May 1, 2024) (quoting *BJB Ltd. v. iStar Jewelry LLC*, 533 F. Supp. 3d 83, 101 (E.D.N.Y. 2021)).

true, Defendants' products are identical with or indistinguishable from the Palace Marks, and the average purchaser would find the allegedly counterfeit marks to be substantially similar to the Palace Marks. (*Id.* at 5–6.) Thus, the Report properly determined that Plaintiffs have established Defendants' liability for trademark counterfeiting.

### 2.  Enhanced Statutory Damages are Appropriate

Once liability is established, the sole remaining issue is whether the plaintiff has provided adequate support for the relief it seeks. *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997).

Plaintiffs seek $75,000 in statutory damages against each Defendant pursuant to 15 U.S.C. § 1117(c) of the Lanham Act for their willful counterfeiting of Plaintiffs' trademark. Under the Lanham Act, at any time before final judgment is rendered, a trademark owner may elect to recover an award of statutory damages, rather than actual damages, in cases of infringement. 15 U.S.C. § 1117(c). Statutory damages are particularly appropriate where actual damages are difficult to calculate. *See Bus. Trends Analysts, Inc. v. Freedonia Grp., Inc.*, 887 F.2d 399, 406 (2d Cir. 1989).

The Report found that statutory damages, in lieu of actual damages, are appropriate given that: (1) Defendants produced no records on which Magistrate Judge Netburn could reasonably calculate damages, and (2) Defendants engaged in willful conduct. (Report at 7.)

The Lanham Act provides for enhanced statutory damages when the use of the counterfeit mark was willful. *See* 15 U.S.C. § 1117(c)(2) ("For the use of a counterfeit mark, a court may award statutory damages in the amount of . . . not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed" if "the court finds that the use of the counterfeit mark was willful"). "The standard for willfulness is 'whether the defendant had knowledge that [his] conduct represented infringement or perhaps recklessly disregarded the

possibility.'" *Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 288 (2d Cir. 1999) (quoting *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1382 (2d Cir. 1993)).

The Report correctly determined that enhanced statutory damages are appropriate. (Report at 8.) The Report explained that Defendants' default, failure to participate in the damages inquest, and use of graphics nearly identical to the Palace Marks constituted willful conduct under the Lanham Act. (*Id.* at 7–8.) The Report properly concluded that since Defendants' conduct was willful, section 1117(c)(2)'s enhancement for willful infringement may be properly applied. (*Id.* at 8.)

### 3. The Award Amount is Appropriate

Section 1117(c)(2) instructs courts to award a "just" amount and establishes a cap on the award; it provides no further guidance on determining damages. *See All-Star Mktg. Grp v. Media Brands Co.*, 775 F. Supp. 2d 613, 621–22 (S.D.N.Y. 2010). Courts in this district consider the following seven factors when determining damages under section 1117(c)(2):

> (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the [trademark]; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

*Id.* at 622–23 (quoting *Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc.*, No. 03-cv-2132 (GBD)(KNF), 2006 WL 728407, at *6 (S.D.N.Y. Mar. 21, 2006)).

The Report properly analyzed the above factors in concluding that the statutory damages sought by Plaintiffs – $75,000 per Defendant – are reasonable. (Report at 10.) The Report correctly found that factors one and two favor Plaintiffs. (*Id.* at 9.) While Defendants' failure to appear prevented Magistrate Judge Netburn from ascertaining the exact amount of profits and losses, "[c]ourts have supported an inference of a broad scope of operations in cases dealing specifically

with websites that ship and sell to a wide geographic range." *Mattel, Inc. v. 1622758984*, No. 18-cv-8821 (AJN), 2020 WL 2832812, at *7 (S.D.N.Y. May 31, 2020) (internal citations omitted). On factor three, the Report properly determined that Plaintiffs have established the value of the Palace Marks. (Report at 9; Hussey Decl., ECF No. 14, ¶ 4 (highlighting the Palace brand's press appearances and collaborations, and noting that the "Palace Products retail from $48.00 for a basic Tee Shirt, to $1,000.00 for a Luxury Jacket.").)

The Report also properly determined that the remaining factors weigh towards Plaintiffs. (Report at 10.) A high statutory damage award would have a deterrent effect on other possible infringers. (*Id.*) Defendants acted willfully when they used the Palace Marks and failed to appear in this action or otherwise cooperate by providing records. (*Id.*) Finally, a large statutory damage award would discourage Defendants from continuing to use the Palace Marks. (*Id.*)

Magistrate Judge Netburn appropriately concluded that the award amount is reasonable when considering not only the seven enumerated factors, but also that "the amount sought against each Defaulting Defendant is (a) well below the maximum award of two million dollars that could be assessed against each of them individually for willful counterfeiting, and (b) well within the range of awards granted by courts in this district in similar circumstances." (Report at 10) (quoting *Off-White LLC v. Baoding Springru Trade Co., LTD.*, No. 19-cv-674 (RA) (JLC), 2020 WL 1646602, at * 21 (S.D.N.Y. Apr. 3, 2020), *R. & R. adopted*, 2020 WL 3050553 (June 8, 2020) (awarding $100,000 in statutory damages per defendant, where defendants were Alibaba sellers)).

## B. Plaintiffs are Entitled to Post-Judgment Interest

The Report properly concluded that Plaintiffs should be awarded post-judgment interest. (Report at 11.) As noted in the Report, the Lanham Act permits a plaintiff to receive post-judgment interest "on any money judgment in a civil case recovered in a district court. . . [to] be calculated

from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). Since the Report did not err, this Court awards damages of $75,000 per Defendant, plus post-judgment interest to Plaintiffs.

### III.    PLAINTIFFS ARE ENTITLED TO A PERMANENT INJUNCTION

A permanent injunction may be granted where a plaintiff demonstrates that it has succeeded on the merits and: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Turning to factor one, plaintiffs are entitled to a rebuttable presumption of irreparable harm after a finding of liability for trademark violations. *See* 15 U.S.C. § 1116(a) ("A plaintiff . . . shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction . . ."). As detailed above, Plaintiffs have successfully established a claim of trademark counterfeiting against Defendants and are therefore entitled to a presumption of irreparable harm. *See* Section II(A)(1). Defendants have failed to respond or otherwise rebut such presumption. Thus, the first factor is satisfied.

As to the second factor, a showing that there is no adequate remedy at law "is satisfied where the record contains no assurance against defendant's continued violation of a plaintiff's rights." *Kelly Toys Holdings, LLC v. alialialiLL Store*, 606 F. Supp. 3d at 52 (internal citations omitted). When a defendant defaults, "a court may infer that the defendant is willing to, or may

8

continue its infringement." *Id.* at 52– 53 (internal citations omitted). Such an inference is warranted here given Defendants' default and subsequent failure to participate in the damages inquest. Since "the record contains no assurance against [Defendants'] continued violation of [Plaintiffs'] rights," monetary damages alone are insufficient. *See id.* at 52; *see also Hounddog Prods., L.L.C. v. Empire Film Group. Inc.*, 826 F. Supp. 2d 619, 633 (S.D.N.Y. 2011) ("Given the significant threat of future infringement, Plaintiff cannot be compensated with monetary relief alone.").

As to factor three, a remedy in equity is warranted after considering the balance of hardships. *See eBay Inc.*, 547 U.S. at 391. As Plaintiffs argue, "the balance of hardships unquestionably and overwhelmingly favors Plaintiffs since they have suffered and will continue to suffer irreparable harm to their business, profits, goodwill and reputation as a result of Defendants' willful and knowing use of the Palace Marks." (Mot. at 12.)

Finally, the public interest would not be disserved by a permanent injunction. "[T]he public has an interest in not being deceived – in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010) (granting motion to enjoin defendant from further trademark violations). Here, the public has an interest in being assured that the Palace Marks and Palace Products are of authentic origin.

In sum, all requirements for a permanent injunction are satisfied, and the injunctive provisions of the Preliminary Injunction Orders are converted to a permanent injunction in favor of Plaintiffs.

## IV.    CONCLUSION

Magistrate Judge Netburn's Report is **ADOPTED** in its entirety. Plaintiffs are awarded $75,000 per Defaulting Defendant, plus post-judgment interest pursuant to 28 U.S.C. § 1961(a).

In Case No. 20-cv-6103, where there are 16 Defaulting Defendants, the award totals $1,200,000. In Case No. 20-cv-6108, where there are 31 Defaulting Defendants, the award totals $2,325,000.

A permanent injunction is issued, providing that Defendants shall not engage in any further counterfeiting or infringement of Plaintiffs' Palace Marks as detailed in the Preliminary Injunction Orders.

The Clerk of Court is directed to close Case No. 20-cv-6103 and Case No. 20-cv-6108 accordingly.

Dated: New York, New York
JUL 1 6 2025

SO ORDERED.

GEORGE B. DANIELS
United States District Judge